**FILED**
**Apr 08, 2025**
**01:22 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **MARCUS LEAVELLE,** | ) | **Docket No.: 2022-08-0109** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | |
| **RCT MEMPHIS TN PC,** | ) | **State File No.: 90156-2021** |
| **Employer,** | ) | |
| | ) | |
| **And** | ) | |
| **INDEMNITY INSURANCE** | ) | **Judge Shaterra R. Marion** |
| **COMPANY OF NORTH AMERICA,** | ) | |
| **Carrier.** | ) | |

## COMPENSATION HEARING ORDER GRANTING BENEFITS

The Court held a Compensation Hearing on March 24, 2025, on Mr. Leavelle's entitlement to medical, temporary, and permanent disability benefits. Mr. Leavelle argued that his injury arose primarily out of and in the course and scope of his employment. RCT argued Mr. Leavelle's injury was not work related based on the opinion of the authorized treating physician. The Court holds that Mr. Leavelle's injury arose primarily out of and in the course and scope of his employment and partially grants the requested benefits as detailed below.

### History of Claim

On December 1, 2021, Mr. Leavelle injured his left knee when it buckled after he hopped out of a trailer.[1] He saw board-certified osteopath Dr. John Goodfred as his authorized treating physician. Dr. Goodfred examined Mr. Leavelle and took x-rays and an MRI. The exam showed knee swelling and tenderness, and the MRI showed joint effusion. Dr. Goodfred ordered physical therapy for a month.

---

[1] Mr. Leavelle had a history of left-knee injuries but testified it had fully healed before this injury.

1

At a December 23 physical therapy visit, Mr. Leavelle reported to the therapist that his daughter ran into his knee with a hoverboard, causing increased pain and swelling. Mr. Leavelle also saw Dr. Goodfred that day but did not mention either increased pain or the hoverboard incident. Mr. Leavelle testified that he did not specifically remember the hoverboard incident and it was "kind of an insignificant thing."

On December 23, Dr. Goodfred released Mr. Leavelle at maximum medical improvement, stating he needed additional care and restrictions. However, Dr. Goodfred believed Mr. Leavelle's ongoing knee problems did not arise primarily out of and in the course and scope of his employment.

Mr. Leavelle testified he could not continue to work at RCT. He stated he used up all his available leave, and then RCT terminated him for not returning to work. He did not give the specific date of his termination.

Dr. Goodfred testified at his deposition that he could not explain the effusion shown on the MRI. He also testified that he did not think Mr. Leavelle's injury was work-related due to the mechanism of injury and the MRI findings. He stated that "[a]t the point of the MRI, I discerned that [his injury] was not greater than 50 percent" work related. He later explained that it was "reasonable to believe" the hoverboard incident exacerbated or aggravated Mr. Leavelle's condition. Dr. Goodfred never specifically acknowledged Mr. Leavelle's ultimate diagnosis, a chondral lesion.

Mr. Leavelle treated on his own with board-certified orthopedic surgeon Dr. David Bernholt. Dr. Bernholt examined him and reviewed the MRI and x-rays, but he did not have a good explanation for the effusion, either. He ordered physical therapy. Dr. Bernholt placed Mr. Leavelle on "sedentary duty only," but Mr. Leavelle did not testify whether RCT would accommodate sedentary duty or if he tried to work elsewhere.

Dr. Bernholt recommended surgery after conservative treatment failed. He performed an arthroscopy on June 17, 2022, and found a full-thickness chondral lesion. He removed the lesion and repaired the affected area. This resolved the effusion, and Dr. Bernholt placed Mr. Leavelle at maximum medical improvement on November 3 with a 2% impairment rating.

Dr. Bernholt testified by deposition that he found Mr. Leavelle's knee injury greater than 50% work related. He also testified that his treatment and billing totaling $14,397.24 were reasonable, necessary, and related to the work injury. He explained that sometimes, due to the quality of the MRI, chondral lesions can be missed. Without mentioning the hoverboard incident, he explained that the injury Mr. Leavelle described – stepping off the truck – could have caused the chondral lesion because an awkward step could have generated enough force for his femur to impact his tibia.

In November 2022, Mr. Leavelle began working for a new employer. He was initially paid about $18.00 per hour, then $19.25, and now he makes $20.92. He testified that RCT paid him by the mile, and he roughly calculated his hourly wage as $25.25.

## Findings of Fact and Conclusions of Law

At this Compensation Hearing, Mr. Leavelle must prove all elements of his case by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2024). He must show that his chondral lesion arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(12).

### *Causation*

Mr. Leavelle relied on Dr. Bernholt's opinion, and RCT relied upon Dr. Goodfred's. Because Mr. Leavelle chose Dr. Goodfred from a panel, his opinion is presumed correct subject to rebuttal by a preponderance of the evidence. § 102(12)(E). With conflicting medical opinions, the Court must determine if Mr. Leavelle rebutted the presumption of correctness attached to Dr. Bernholt's opinion. After reviewing the evidence, the Court holds he did.

When deciding which medical opinion to accept, the Court can consider the experts' qualifications, the circumstances of their examinations, the information available to them, and the importance attached to the information by other experts. *Smith v. TrustPoint Hosp., LLC,* 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at *19-20 (Jan. 6, 2021).

As to qualifications, Dr. Goodfred is a board-certified osteopath with no specialty, while Dr. Bernholt is a board-certified orthopedic surgeon. This factor favors Dr. Bernholt.

The circumstances of their examinations and the information available to them favor Dr. Bernholt as well. Dr. Goodfred saw Mr. Leavelle immediately after the accident, but he only saw him over the course of a month. Dr. Bernholt treated Mr. Leavelle for ten months and ultimately performed a diagnostic surgery that revealed Mr. Leavelle's condition.

Dr. Bernholt, therefore, amassed a much larger amount of information through the steady progression of treatment, leading him to determine that Mr. Leavelle's effusion and chondral lesion were work related. The Appeals Board affirmed a trial court's decision to accept a causation opinion of a physician who "had the benefit of seeing the condition of Employee's [injured body part] during surgery" and "followed Employee as a patient and saw [his] lack of progress with conservative care firsthand." *Id.* at *21.

The ultimate question is whether Mr. Leavelle's work injury caused his chondral lesion. Dr. Bernholt answered that question; Dr. Goodfred did not. In his deposition, Dr.

Goodfred did not acknowledge that Mr. Leavelle was ultimately diagnosed with a chondral lesion and offered no causation opinion. He based his opinion, in part, on the MRI, which Dr. Bernholt's diagnostic surgery showed to be inaccurate.

Considering the *Smith* factors, the Court holds Mr. Leavelle has shown by a preponderance of the evidence that Dr. Bernholt's opinion rebuts the presumption of correctness attached to Dr. Goodfred's opinion.

RCT also argued that the hoverboard incident constituted an independent, intervening event. The Appeals Board previously explained, the "direct and natural consequences" rule states that "every natural consequence that flows from the [work-related condition] arises out of the employment, unless it is the result of an independent intervening cause attributable to the employee's intentional conduct." *Braden v. Mohawk Indus., Inc.,* 2022 TN Wrk. Comp. App. Bd. LEXIS 11, at *8 (Mar. 1, 2022).

While Dr. Goodfred stated that trauma like a collision with a hoverboard could cause knee effusion, he also said he formed his causation opinion "at the point of the MRI," which occurred before the hoverboard incident. Further, he acknowledged that Mr. Leavelle had swelling and pain before the hoverboard incident. Dr. Bernholt did not mention the hoverboard incident at all.

Thus, no evidence shows that the hoverboard incident factored into either doctor's causation opinion, so the Court holds that it does not constitute an independent, intervening cause.

*Permanent Partial Disability*

If an employee is permanently partially disabled, he shall be paid 66 and 2/3% of his average weekly wages for the period of compensation, which is determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 50-6-207(3)(A). Based on Dr. Bernholt's 2% impairment rating, Mr. Leavelle is entitled to an initial award of nine weeks at the compensation rate of $658.86 or $5,929.74.

RCT argued that if the Court found Mr. Leavelle's claim compensable, his compensation period ended on May 1, 2023, based on the November 3, 2022, date of maximum medical improvement. The Court agrees.

If an employee has not returned to work at an equal or greater rate of pay by the end of the initial compensation period, he may be entitled to increased benefits based on his work status and age. § 207(3)(B).

Here, the issue is whether Mr. Leavelle earned less pay when the compensation period expired. The "correct apples to apples comparison for purposes of determining

4

whether an employee returned to work at a wage equal to or greater than the wage he was receiving prior to his injuries is between the 'base pay' of the two jobs." *Gray v. Tyson Foods, Inc.,* 2024 TN Wrk. Comp. App. Bd. LEXIS 10, at *10 (Mar. 12, 2024).

RCT paid Mr. Leavelle by the mile. His unrebutted testimony was that his pay by the mile equated to about $25.25 per hour. RCT only stated the mileage fluctuated. He made $20.92 when his compensation period expired. Therefore, the Court holds that Mr. Leavelle is entitled to increased benefits due to his rate of pay being lower when his compensation period expired.

Mr. Leavelle is entitled to the multipliers of 1.35 for not returning to work at a wage equal to or greater than the wage he received before his injury, and 1.2 because he is over age 40, for a total of $3,676.44 in increased benefits.

*Medical Benefits*

An employer must furnish medical treatment at no cost to the employee. Tenn. Code Ann. § 50-6-204(a)(1)(A). Therefore, RCT shall furnish reasonable, necessary, and related medical treatment.

The Appeals Board held that "[a]n employer who denies liability for a compensable injury is in no position to insist upon the statutory provisions respecting the choosing of physicians" when determining if an employee may continue treating with his unauthorized physician. *Hagan v. Potomac Corp.*, 2022 TN Wrk. Comp. App. Bd. LEXIS 5, at *10 (Feb. 9, 2022). A relevant consideration is "whether the employee established a doctor/patient relationship with a physician of the employee's choice following the employer's denial of the claim." *Id.*

Here, Mr. Leavelle clearly established a doctor/patient relationship with Dr. Bernholt through the ten months of treatment. Therefore, the Court designates Dr. Bernholt as the authorized treating physician.

Further, Dr. Bernholt testified that his treatment was related to the work injury and was reasonable and necessary. Therefore, RCT shall pay Mr. Leavelle's medical bills incurred with Dr. Bernholt under the fee schedule.

*Temporary Disability Benefits*

To qualify for temporary total disability benefits, Mr. Leavelle must show: (1) a disability from working due to a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). For temporary partial disability benefits, he must show that Dr. Bernholt returned

him to work with restrictions that RCT either could not or would not accommodate. *See id.* at *8.

Here, Mr. Leavelle gave sparse testimony regarding what occurred after Dr. Goodfred released him on December 23, 2021. After his release, Mr. Leavelle stated he used up his leave. RCT terminated him on an unknown date. The record does not show whether he began seeing Dr. Bernholt during this time.

Dr. Bernholt placed Mr. Leavelle on sedentary duty on January 27, 2022. However, Mr. Leavelle offered no testimony on whether RCT could accommodate sedentary duty, whether he was still employed by RCT at that time, or whether he could find different work with sedentary duty.

The Court, therefore, finds that Mr. Leavelle's period of temporary total disability began when Dr. Bernholt performed surgery on June 17, 2022, and ended when Dr. Bernholt placed him at maximum medical improvement on November 3, 2022, or 19 weeks and six days at $658.86 for a total of $13,083.08

**IT IS THEREFORE ORDERED** as follows:

1. Mr. Leavelle's request for temporary disability benefits is granted. RCT shall pay $13,083.08. His attorney is entitled to a fee of 20% of this award.

2. Mr. Leavelle's request for permanent partial disability is granted. RCT shall pay $5,924.74. His attorney is entitled to a fee of 20% of this award.

3. Mr. Leavelle's request for enhanced benefits is granted. RCT shall pay $3,676.44. His attorney is entitled to a fee of 20% of this award.

4. RCT shall pay Mr. Leavelle's unauthorized medical bills with Dr. Bernholt under the fee schedule. His attorney is entitled to a fee of 20% of this award.

5. RCT shall continue to provide medical treatment with Dr. David Bernholt for any reasonable, necessary, and work-related condition under Tennessee Code Annotated section 50-6-204.

6. RCT shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.06 within five days of entry of this order.

7. RCT shall file an SD-2 within ten days of this order becoming final.

8. Unless appealed, this order shall become final 30 days after entry.

**ENTERED April 8, 2025.**

_____
**Judge Shaterra R. Marion**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1) Dr. David Bernholt's First Deposition, from October 4, 2023, with Attachments
2) Dr. David Bernholt's Second Deposition, from July 17, 2024, with Attachments
3) Dr. John Goodfred's Deposition, with Attachments

**CERTIFICATE OF SERVICE**

I certify that a copy of this order was sent as indicated on April 8, 2025.

| Name | Email | Service sent to: |
|---|---|---|
| Andrew Wener, Scott Kramer, Employee's Attorneys | X | awener@wenerlawfirm.com skramer@wenerlawfirm.com |
| Garett Franklyn, Brayden Hunter, Employer's Attorneys | X | gpfranklyn@mijs.com brhunter@mijs.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*